UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARBRASUE BEATTIE and JAMES SOVIS,
on behalf of themselves and others
similarly situated,

            Plaintiffs,

                                      Case Number 02-10277-BC
v.                                  Honorable David M. Lawson

CENTURYTEL, INCORPORATED,

            Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND PARTIAL JUDGMENT ON THE PLEADINGS, AND DENYING PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

      The plaintiffs, BarbaraSue Beattie and Jim Sovis, have filed a putative class action against their telephone service provider under certain provisions of the Federal Telecommunications Act, 47 U.S.C. 201 *et seq.*, and regulations enacted thereunder, as well as various state law theories, challenging the practice used by the defendant for billing for inside wire maintenance insurance and for charging for such optional service when it was not ordered. The case presently is before the Court on motions by the plaintiffs for class certification, for judgment on the pleadings, and to strike certain affirmative defenses. Sixth Circuit precedent suggests that claims of fraudulent billing practices by telecommunications companies fall within the primary jurisdiction of the Federal Communications Commission, and the question whether the federal claims in this case ought to be transferred to that agency is a close one. However, the Court finds that the purposes of the primary jurisdiction doctrine will not be advanced by a transfer, jurisdiction lies in this Court, the plaintiffs have satisfied the requisites for class certification, and defendant's acknowledged billing practice violated the Federal Telecommunications Act as a matter of law. The Court, therefore, will grant

the motion for class certification, grant the plaintiffs' motion for partial judgment on the pleadings, and deny the motion to strike affirmative defenses.

I.

According to the parties, defendant CenturyTel is the eighth largest telephone company in the United States and currently provides telephone, internet access, long distance, and high-speed data services to more than 1.7 million customers in 22 states. As part of its services, the defendant also offers an unregulated inside wire maintenance service program called "WireWatch." CenturyTel describes the program in its promotional literature as follows:

> WireWatch covers the cost of diagnosis and repair of inside wiring and/or jack damages that can interrupt your phone service. Once your telephone wiring enters your house, it becomes your responsibility to maintain it and typical repairs can be costly. For a low monthly fee, enjoy the convenience and satisfaction of having a certified CenturyTel Tech to diagnose and make any necessary repairs.

Compl. at ¶ 19; Ans. at ¶ 19.

This plan is an unregulated service not covered by CenturyTel's tariffs or rate filings. In some states, CenturyTel has offered WireWatch for a number of years, but in others, such as Alabama and Missouri, WireWatch only recently has become available through CenturyTel to its customers. The main reason for this variance is the manner in which CenturyTel has grown through acquisition of other telephone companies.

The state-by-state network of CenturyTel telephone service providers is an amalgamation of small companies acquired by CenturyTel over time. As a consequence, the services offered to current customers of CenturyTel historically has differed from state to state, and sometimes varied in regions within a single state. Billing formats varied widely as well. According to CenturyTel, the defendant acquired access lines and customers in Missouri from GTE (now Verizon) in

-2-

September 2000 and 2002; and in Alabama from Verizon in July 2002.  The defendant purchased properties in Arkansas and Wisconsin in the late summer/early fall of 2000.  When the defendant purchased Pacific Telecommunications, Inc. in 1997, it obtained customers in Arizona, Colorado, Idaho, Iowa, Minnesota, Montana, New Mexico, Oregon, Washington, and Wisconsin.

The complaint alleges that beginning in at least 1994, and perhaps before that time, defendant CenturyTel has been billing customers for the maintenance of internal wiring at a rate of $.50 to $.99, and that the rate increased to $3.95 in or about May 2001.  Up through approximately January of 2002, CenturyTel labeled this charge as one for "Non-Regulated Services."  At that time, it reorganized its telephone bills and re-labeled the charge to "Inside Wire Maintenance Plan."   The complaint alleges that this is the first time CenturyTel customers were given any indication that this charge had all along been for an optional wire protection program.  The plaintiffs describe this procedure as a form of "cramming," a term used by the Federal Communications Commission ("FCC") to refer to the practice of placing unauthorized, misleading, or deceptive charges on customer phone bills.

Plaintiff Barbrasue Beattie resides in Chesaning, Michigan and has been a customer of CenturyTel since at least November of 1996.  Beattie's telephone bills from November 1996 through May 2001 contained the above-described charge for "Non-Regulated Services," which Beattie paid.  She also paid a monthly charge of $3.95 from May 2001 through January 2002 when the label for the maintenance program was changed.  At that time, Beattie contacted CenturyTel to complain about the charge and to seek a refund of charges dating back to 1996.  CenturyTel responded with a letter that acknowledged Beattie had never signed up for the optional service, but refused to credit her account for charges before May 2001.

Plaintiff James Sovis resides in New Lothrop, Michigan, and has been a residential telephone customer of CenturyTel since at least 1994.  Like Ms. Beattie, Sovis paid for "Non-Regulated Services" through January 2002.

The complaint seeks certification of the following nationwide class, spanning approximately 1.8 million access lines in twenty-two states:

> All persons who have paid CenturyTel, Inc. for charges described in CenturyTel's residential telephone bills as "Non-Regulated Services" or "Inside Wire Maint. Plan" during the fullest period allowed by law.

Compl. at ¶ 11.  Excluded from the proposed class are CenturyTel, its employees and subsidiaries, and the successors and representatives of any excluded party.

The plaintiffs' suit alleges that the defendant intentionally mislabeled the wire service program and by keeping the charge relatively small reaped substantial rewards for what amounts to a deceptive billing practice under the Federal Communications Act, 47 U.S.C. § 201(b), and under the Truth-in-Billing regulations.  They also claim that the defendant's practices caused it to breach its contracts with customers, resulted in unjust enrichment to the defendant, and the defendant's practices violate numerous provisions of the Michigan Consumer Protection Act.

The plaintiffs' complaint pleads six counts: Count 1 alleges that the defendant's billing actions violate 47 U.S.C. §§ 201(b), 206, and 207, as well as the FCC's Truth-in-Billing regulation, 12 C.F.R. § 64.2401; Count 2 claims that the defendant's activities constitute "cramming" contrary to these same statutes and rules; Count 3 seeks declaratory and injunctive relief pursuant to 47 U.S.C. § 401 for a declaration that the defendant violated 47 U.S.C. § 201(b) and 12 C.F.R. § 64.2401, and to enjoin the defendant from continuing to violate these laws and regulations; Count 4 alleges breach of contract and the duty of good faith and fair dealing with existing customers in

relation to billing for telephone services in violation of state law; Count 5 raises a claim for unjust enrichment and disgorgement by the defendant for any profits it gained from deceptive billing practices; and Count 6 challenges the defendant's billing practices under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*

The defendant previously moved to dismiss the plaintiffs' complaint on February 24, 2003; within that motion the defendant also requested that the Court apply the doctrine of primary jurisdiction to the plaintiffs' fourth (breach of contract and breach of the duty of good faith and fair dealing) and fifth (unjust enrichment and disgorgement) claims since the doctrine required that specific deference be given to the Michigan Public Service Commission. The plaintiffs opposed the motion, and the Court subsequently granted the defendant's request to withdraw it without prejudice on May 30, 2003.

Subsequently, the plaintiffs sought to certify this action as class consisting of "all CenturyTel, Inc. ('CenturyTel') residential telephone customers who have paid charges for an inside wire maintenance service program described in CenturyTel's telephone bills as 'Non-Regulated Services' or 'Inside Wire Maint. Plan' from January 1, 1987 to the present (the 'Class'). Excluded from the Class are CenturyTel; its subsidiaries, affiliates, officers and directors; any entity in which CenturyTel has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded party." *See* Pls.' Mot. for Class Cert.; Compl. at ¶ 11. The plaintiffs also have filed their own motion for judgment on the pleadings or for partial summary judgment.

II.

The first three counts of the complaint plead claims under sections 201(b), 206 and 207 of the Telecommunications Act.  Section 201(b) states:

> All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful. . . .  The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.

47 U.S.C. § 201(b).  Section 206 states that a common carrier who violates the Act is liable "for the full amount of damages sustained in consequence of any such violation . . . together with a reasonable counsel or attorney's fee."  47 U.S.C. § 206.  Section 207 permits an aggrieved person to file a complaint with the FCC or commence an action in the district court.

Sixth Circuit precedent suggests that the question of whether a telecommunications carrier's billing practices are "unjust or unreasonable" presents a matter within the expertise of the FCC and is referable to its primary jurisdiction.  *See In re Long Distance Telecomm. Litig.*, 831 F.2d 627 (6th Cir. 1987).  In that case, a long distance carrier sued certain competitors alleging that the competitors failed to disclose certain bulling practices, rendering those bills "unreasonable and unjust" within the meaning of section 206(b).  The district court dismissed the case because it found the claims were within the primary jurisdiction of the FCC.  The court of appeals agreed that the doctrine of primary jurisdiction made the FCC the forum best able to decide the issue, but it held that the district court should not have dismissed the case.  Rather, it should have transferred the case for resolution of the question and stayed the lawsuit until after the FCC acted.  The case was followed with the same result in *Kiefer v. Paging Network, Inc.*, 50 F. Supp. 2d 681 (E.D. Mich.

-6-

1999), where the plaintiffs challenged the billing practice of a communications service provider under section 201(b).

These cases make clear that the doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976). "The doctrine is properly invoked when enforcement of a claim in court would require resolution of issues that have already been placed within the special competence of an administrative body." *Kiefer*, 50 F. Supp. 2d at 683. But the doctrine must be applied on a case-by-case basis, *In re Long Distance Telecomm. Litig.*, 831 F.2d at 630, and it should not cause the court to abstain from determining a dispute unless "the reasons for the existence of the doctrine are present and . . . the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956); *see also Allied Tennessee v. Tennessee Pub. Srv. Comm'n*, 913 F.2d 305, 309 (6th Cir. 1990) (stating that "[a] court must apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present").

In *In re Long Distance Telecommunications Litigation*, the court recognized that two factors favoring application of the doctrine are the need for uniform application of a rule and the desirability of a specialized agency first passing on the disputed question. 831 F.2d at 630. Courts also should consider whether (1) the issue is within the conventional expertise of judges; (2) the issue lies within the agency's discretion or requires the exercise of agency expertise; (3) there is a substantial danger of inconsistent rulings; (4) a prior application to the agency has been made; (5) the issue has already been addressed by the agency; (6) judicial economy is served by having the agency decide the

-7-

question; and (7) referral will result in substantial delay and added expense. *See Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001); *Young Soon Oh v. AT&T Co.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999).

In this case, both parties have filed supplemental briefs arguing that the case should not be transferred, although each party offers substantially different reasons for its position. The Court is persuaded that transfer would not serve the purpose of the primary jurisdiction doctrine because the FCC plainly has expressed its views on the issue presented and the economies are better served if the matter remains in the district court.

Although the language of the statute prohibiting "unjust or unreasonable" charges and billing practices leaves considerable room for interpretation, the FCC has enacted a clarifying regulation:

> (b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.

47 C.F.R. § 64.2401(b). In its report filed as part of the rulemaking process that led to this regulation, the FCC explained:

> We contemplate that sufficient descriptions will convey enough information to enable a customer reasonably to identify and to understand the service for which the customer is being charged. Conversely, descriptions that convey ambiguous or vague information, such as, for example, charges identified as "miscellaneous," would not conform to our guideline. *Similarly, in our view, a charge described by what it is not, such as, for example "service not regulated by the Public Service Commission" is inherently ambiguous and does not disclose sufficient information. There is no way for a consumer to discern from this description that the charge refers to, for example, inside wiring maintenance insurance.*

-8-

*First Report and Order and Further Notice of Proposed Rulemaking*, FCC 99-72 at 26 (Apr. 15, 1999) (emphasis added). The language chosen by the defendant to describe its optional inside wire maintenance service closely tracks the phrasiology criticized by the FCC as "inherently ambiguous," specifically as it might be applied to describe the very service at issue in this case. It is quite unlikely that the FCC would determine that language complied with its regulation. Although the FCC's pronouncement did not occur in the context of an actual controversy, the uncanny overlay of the example given by the agency and the facts of this case allows the language of the report to serve as a suitable proxy for a prior adjudication for the purpose of obviating the need of a referral under the primary jurisdiction doctrine.

Likewise, there are other issues that must be decided in this action, such as whether the plaintiffs' class should be certified and whether the plaintiffs may proceed with their state law claims while seeking certification of a nationwide class. The delay inherent in a referral would not serve the parties' interests.

For these reasons, the Court declines to refer the case to the FCC under the doctrine of primary jurisdiction.

III.

The plaintiffs seek certification of the following class:

> [A]ll CenturyTel, Inc. ("CenturyTel") residential telephone customers who have paid for charges for an inside wire maintenance service program described in CenturyTel's telephone bills as "Non-Regulated Services" or "Inside Wire Maint. Plan" from January 1, 1987 to the present (the "Class"). Excluded from the Class are CenturyTel; its subsidiaries, affiliates, officers and directors; any entity in which CenturyTel has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded party.

Pls' Mot. for Class Cert. at 1.

According to Federal Rule of Civil Procedure 23, a matter may proceed as a class action in the name of representative parties if (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 268 (E.D. Mich. 2001), *aff'd* 383 F.3d 495 (6th Cir. 2004).  These factors are normally referred to as numerosity, commonality, typicality, and adequacy of representation.

A class must meet all of the above prerequisites plus one of those listed in Federal Rule of Civil Procedure 23(b) to be certified.  *Amchem Prods., Inc.*, 521 U.S. at 614; *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  The plaintiff bears the burden of establishing that all prerequisites for class certification are satisfied.  *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).

## A.

The first prerequisite to class certification under Rule 23(a) is numerosity.  *Olden*, 203 F.R.D. at 268.  There is no strict numerical test to determine when the class is large enough or too numerous to be joined under the Federal Rules of Civil Procedure.  *Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 19 (N.D. Ohio 2000).  The Court may consider many factors, including "class size, ease of identification of members of the proposed class . . . geographic dispersion of class members, and whether proposed members of the class will be able to pursue remedies on an individual basis."  *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 74 (D. N.J. 1995).

-10-

In this case, the plaintiffs have discovered that CenturyTel has approximately 1.7 million customers in 22 states, and that 500,000 to 700,000 customers have been billed for CenturyTel's wire maintenance service plan during each of the last few years. CenturyTel argues, however, that certification is not appropriate because the plaintiffs rely solely upon "conclusory allegations that joinder is impracticable." *Rockey v. Courtsey Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001) (stating that "[p]laintiffs are not required to specify the exact number of persons in the class, but cannot rely on conclusory allegations that joinder is impractical. Mere speculation as to the numbers of parties involved is not sufficient to satisfy Rule 23(a)(1)"). The defendant contends that an assertion that all CenturyTel customers receiving WireWatch were duped goes too far because it fails to recognize the multitude of customers who: (1) knowingly signed up for the service; (2) cannot claim they were misled by the billing statements; (3) benefitted from the service; or (4) would have enrolled in WireWatch notwithstanding the allegedly deceptive billing descriptions. Similarly, the plaintiffs' arguments ignore the fact that they have not isolated customers who were allegedly "crammed." In fact, "to date, [the] plaintiffs have only identified about a dozen alleged incidents of cramming in three states (Michigan, Ohio and Montana) . . . This clearly does not constitute a class so 'numerous' that joinder would be impracticable." *See* Defendant's Amended Response in Opposition to Plaintiffs' Motion for Class Certification (Def's Opp) at 8-9.

However, "[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal.

-11-

1982).  Here, the plaintiffs state that between 500,000 and 700,000 customers may have been unwittingly charged for WireWatch.  This suggests that some if not all of these customers are potential class members.  Additionally, the defendants concede that there are at least a dozen potential class members are spread over three states.  The plaintiffs do admit that the potential class members are easily ascertainable since the names and addresses of putative class members appear in a computer database in the defendant's control.  Nonetheless, the amount of each claim, perhaps no more than a few hundred dollars, is a relatively small amount, when compared to the potential profits earned by the defendant if the allegations of the class prove to be true, suggesting that a class action may be the only effective remedy.

Moreover, the concerns of the defendant over identifying those customers who were not deceived by its billing descriptions, such as people who would have enrolled anyway or who benefitted by their unwitting participation in the plan, confounds the liability issues with the matter of damages.  The defendant will be liable for deceptive or misleading billing language, regardless of the desire of the customer for the service or a customer's subsequent actions.  The damages that flow from that statutory violation might be reduced if the customer had ordered the service; but the point of the statute and clarifying regulation is that bills must be clear enough to allow customers to "accurately assess that the services for which they are billed correspond to those that they have requested."  47 C.F.R. § 64.2401(b).  If the billing language is inadequate, a violation occurs, and it remains to determine the consequence of the violation.  The plaintiffs suggest that the ambiguous billing practice was widespread, and therefore it is reasonable to accept the conclusion that the class is large.  The matter of damages can be addressed by the creation of subclasses to conform to the

-12-

circumstances shared by various members of the class whose losses may have varied depending on the consequences of the defendant's actions.

The Court finds that the numerosity requirement is satisfied.


B.

The second prerequisite for class certification is commonality.  *Olden*, 203 F.R.D. at 269. Commonality simply means that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This provision does demand that all questions of law and fact raised in the complaint are common.  "The standard is not [that] demanding. 'Rule 23(a) simply requires *a* common question of law or fact.'" *Rockey*, 199 F.R.D. at 583 (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)).

In its response to the plaintiffs' motion for class certification, the defendant contests commonality by arguing that the presence of oral representations and the need for each plaintiff to show reliance undermines a finding of commonality.  However, as noted above, the common claim in Count I arises out of continuous action by the defendant, namely its WireWatch billing practices, which suggests a violation by the issuance of telephone bills with ambiguous or deceptive language. The allegations of "cramming" in Count II may be narrower in scope, but that does not diminish the fact that claimed billing violations are common among the putative class members.

The Sixth Circuit has explained that the commonality and typicality requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

-13-

*Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir. 1998). The Court finds that the plaintiffs have established the commonality requirement.

C.

The third prerequisite for class certification is typicality. *Olden*, 203 F.R.D. at 269. Typicality requires that a "sufficient relationship exist[] between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000). Although the named plaintiffs' claims must fairly encompass the class members' claim, they need not always involve the same facts or law. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998); *Senter v. General Motors Corp.* 532 F.2d 511, 525 n.31 (6th Cir. 1976). "The test for typicality, like commonality, is not demanding." *Rockey*, 199 F.R.D. at 584.

In the present case, CenturyTel alleges that the typicality prerequisite is not met because of the great variance in damages sought by the named class members. Additionally, the defendant challenges a finding of typicality because there has been no showing on this record of how many of the putative class members were the victim of deceptive billing. The defendant contends that a myriad of legal and factual issues exist between the class representative and the putative class members, which destroys typicality. The underlying claims center around the existence of a contract. Thus, questions of oral modification, consent, ratification and acquiescence arise as to the individual claims and the individual class members.

Once again, however, the defendant's argument confounds the matters of liability and damages. A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal

-14-

theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). The question presented is whether the billing language cited by the plaintiffs satisfies the requirements of the statute and regulation. If it does not, an additional question of what damages result may require the creation of subclasses. However, the Court believes that the plaintiffs have satisfied the typicality requirement and the resolution of the common issue should advance the resolution of the litigation. *Sprague,* 133 F.3d at 397.

D.

The fourth prerequisite for class certification is the adequate representation of the class by the class representatives. *Olden*, 203 F.R.D. at 270. "Adequate representation" invokes two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the class members have interests that are antagonistic to the other class members. *Stout,* 228 F.3d at 717. The plaintiffs list the numerous class action cases in which counsel has participated. The defendant does not argue that the plaintiffs' counsel is not qualified to represent the plaintiffs in this class action lawsuit. The plaintiffs' attorney is an experienced practitioner in this area.

The second consideration focuses on the possible antagonistic interests between the named plaintiffs and absent class members. "Antagonistic" means "mutually opposed" or "actively opposed." *Oxford English Dictionary* 501 (2d ed. 1989). "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorous prosecute the interests of the class." *Stout*, 228 F.3d at 717-18. The defendant does not seriously contest that the plaintiffs adequately represent the class. The interests in this case, while of varying degrees, seem to all focus

in the same direction.  Thus, the Court finds that the plaintiffs have satisfied their burden with regard to the adequacy of representation.

The plaintiffs have satisfied all the prerequisites under Rule 23(a).

E.

The plaintiffs also contend that the putative class action meets the requirements of both mandatory and opt-out classes under Rule 23(b).  *See Amchem Products, Inc.*, 521 U.S. at 615-17 (explaining differences between mandatory class actions and opt-out class actions).  The plaintiffs point to Rule 23(b)(1) and argue that permitting individual lawsuits against the defendant would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members."  Fed. R. Civ. P. 23(b)(1)(B). The Court disagrees.  There is no evidence of other litigation against the defendant on similar grounds, and the adjudication of one claim would not have preclusive effect except, perhaps, under the rule of *stare decisis*, which is an ever-present risk.  Nor does the plaintiffs' alternative reliance on Rule 23(b)(2) have merit.  That rule contemplates actions for equitable relief, specifically injunctions.  Although the plaintiffs have requested an injunction, it appears that the defendant amended its billing practices in May 2002 to eliminate reference to ambiguous terms when billing for optional inside wire maintenance services.  Moreover, the main thrust of the plaintiffs' case is to recover damages.  "The court may not use a mandatory Rule 23(b)(2) class as an expedient to circumvent the requirements of Rule 23(b)(3), where the case is principally one for money damages."  *Rockey*, 199 F.R.D. at 594.

Rule 23(b)(3) permits class certification when class suit "may nevertheless be convenient and desirable."  Fed. R. Civ. P. 23 Adv. Comm. Notes, 28 U.S.C. App., p. 697.  To qualify for

-16-

certification under Rule 23(b)(3), a class must satisfy Rule 23(a) and meet two additional requirements: common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  To determine superiority, Rule 23(b) sets out factors to consider, although the list is not exhaustive:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The predominance test focuses on attempting "to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." *Rockey*, 199 F.R.D. at 588 (citation omitted). To determine if common issues predominate, the Court is "under a duty to evaluate the relationship between the common and individual issues . . . taking a pragmatic approach to determine the relative weight and importance of the common and individual issues." *Ibid.*

To prevail on their federal claims, the plaintiffs must show that the defendant's billing practices violated section 201 and they were injured by that violation. The plaintiffs conceded this point during the hearing on the motion for partial judgment on the pleadings on March 18, 2004, when counsel for the plaintiffs agreed that section 201 is not a strict liability statute, and that to establish a claim under section 206 the plaintiffs would have to show some type of injury.  Based on that fact, the defendant argues that the need to prove causation for each plaintiff to show liability

-17-

demonstrates that individual issues predominate.  *Cf. Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000) (holding that a plaintiff fails to satisfy the requirements of Fed. R. 23(b)(3) when the factual core of a case is whether each putative member relied upon false representations).  However, the necessity of each plaintiff proving the amount of his or her damages is generally not an impediment to class certification.  *See Sterling v. Velsicol Chem. Corp.*, 855 F,2d 1188, 1197 (6th Cir. 1988). Although damages may be individualized and not all customers who received ambiguous bills will say that they did not order or authorize the inside wire maintenance insurance program, the overarching question of whether the billing itself violates section 201(b) or Rule 64.2401 predominates and must be determined before any customer has a right to recover under that theory.

In *Olden v. LaFarge Corp*, 383 F.3d 495 (6th Cir. 2004), the Sixth Circuit rejected a similar argument that the specter of manifold individual damage determinations destroyed the predomination of the liability question.  That case concerned a lawsuit brought by  homeowners against the owner of a cement manufacturing plant alleging property and personal damages as a result of emissions.  The defendant argued that "individual issues related to establishing causation will overwhelm the case because toxins: (a) originated from disparate sources within the one-square mile Lafarge facility and perhaps other industrial sources; (b) were dispersed to properties in varying concentrations; (c) allegedly caused a variety of personal injuries; and (d) allegedly caused widely varying property damages."  *Id.* at 508.  However, the court concluded that the defendant's arguments

> may suggest that individual damage determinations might be necessary, but the plaintiffs have raised common allegations which would likely allow the court to determine liability (including causation) for the class as a whole. . . .  As the district court properly noted, it can bifurcate the issue of liability from the issue of damages, and if liability is found, the issue of damages can be decided by a special master or by another method. Fed. R. Civ. P. 23(c)(4)(A); *see also Simon v. Philip Morris Inc*.,

-18-

> 200 F.R.D. 21, 30 (E.D.N.Y. 2001) ("By bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members."). Therefore, the aforementioned minor complaints can be dealt with in the damages phase if necessary, and it is likely premature to address these issues at this point.

*Id.* at 508-509.

Similarly, the questions of causation and damages in this case can be addressed later in the proceedings by means of a special master, representative trials, or other means.  However, because the liability issue predominates, this case falls easily into the category of "cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc.*, 521 U.S. at 615 (internal quotes and citation omitted).

In discussing superiority, the Supreme Court has observed that the rule drafters were mindful of the need to balance an individual's interest in exercising independent decisions in the course of litigation and the benefits that a group action may bring.  *Id.* at 615-16.  That balance tips in favor of class actions when the amount of potential individual recovery is small, as here.  The Court noted that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Carroll v. United Compucred Collections Inc.*, 399 F.3d 620 (6th Cir. 2005) (approving class certification of action under the Fair Debt Collection Practices Act).

In this case, the potential recovery by an individual is relatively small, the liability issue predominates, the issues of management can be addressed by various procedural mechanisms and careful definition of subclasses, and the likelihood of an individual class member preferring to take control of the litigation is remote.  The Court finds, therefore, that the plaintiffs have satisfied the requirements for certification of its class as an opt-out class under Rule 23(b)(3).  The Court will grant the motion for class certification.

IV.

The plaintiffs also argue that they are entitled to judgment on the pleadings on Count I of their complaint pursuant to Federal Rule of Civil Procedure 12(c), contending that the defendant has admitted sending bills to customers describing its WireWatch program as "Non-Regulated Services," and that description in a bill is an "unjust and unreasonable" practice in violation of section 201(b) as a matter of law.  The defendant contends that the plaintiffs' interpretation of section 201(b) is not consistent with the FCC's stated intent behind its clarifying regulations or with analogous federal case law interpreting the Lanham Act.  The defendant insists that the FCC's regulations are intended to be interpreted with regard for context and circumstance, including all of the documents provided to the customer regarding WireWatch and any verbal explanations provided at the time the service was ordered.  In addition, the defendant argues that even if the Court finds that CenturyTel's billing practices violated section 201(b) as asserted in Count 1, that finding should be limited to the Michigan plaintiffs only for the time period between September 2000 and January 2002.

Federal Rule of Civil Procedure 12(c) allows "any party may move for judgment on the pleadings" "[a]fter the pleadings are closed."  Although not typical, a plaintiff may bring a motion

-20-

under this Rule. *Ramsey v. Amfac*, 960 F. Supp. 1424, 1426 (N.D. Cal. 1997). Judgment under Rule 12(c) is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Ibid.*

As noted earlier, Count I of the complaint is based on 47 U.S.C. § 201(b), which states that a "charge [or] practice" made in connection with a communications service "that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). The defendant asserts that traditionally this statute was never applied to billing practices. That argument may have been plausible at one time, but the Court believes that it is unconvincing because the statutory language plainly permits such a construction. *See United States v. Boucha*, 236 F.3d 768 (6th Cir. 2001) (stating the familiar rule of statutory construction that "[t]he language of the statute is the starting point to interpretation, and it should also be the ending point if the plain meaning of that language is clear"). It is not too much to ask of a communications vendor that its bills contain a description of the services for which it is demanding payment. To insist upon a charge without an explanation is a practice that can be understood to be unreasonable.

Moreover, the FCC, which specifically is authorized to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions" of the Telecommunications Act, 47 U.S.C. § 201(b), has determined that the statute applies to billing practices. The provisions of the regulation discussed earlier mandate billing that is "sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received." 47 C.F.R. § 64.2401(b). The defendant's custom of charging for its optional inside wire maintenance insurance under the heading

-21-

"non-regulated services" gives no hint at the services for which charges are assessed.  It does not satisfy the FCC's truth-in-billing requirement and constitutes an unreasonable practice within the meaning of section 201(b).  Any doubt about the inadequacy of that description is dispelled by reference to the FCC's report.  *See First Report and Order and Further Notice of Proposed Rulemaking*, FCC 99-72 at 26 (Apr. 15, 1999) (stating that "in our view, a charge described by what it is not, such as, for example "service not regulated by the Public Service Commission" is inherently ambiguous and does not disclose sufficient information.  There is no way for a consumer to discern from this description that the charge refers to, for example, inside wiring maintenance insurance").

It is well established that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).  The Supreme Court has held that the FCC is entitled to *Chevron* deference when enacting rules under section 201(b) of the Telecommunications Act.  *See National Cable & Telecomm. Assn. v. Brand X Internet Servs.*, 545 U.S. ___, ___, 125 S. Ct. 2688, 2699 (2005) (explaining that an FCC regulation receives *Chevron* deference because "Congress has delegated to the Commission the authority to . . . 'prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions' of the Act") (quoting 47 U.S.C. § 201(b)).

The defendant contends that the billing statement description of WireWatch as a "Non-Regulated Service" is a true statement, and under section 64.2401(b) a court cannot determine whether a billing description violates section 201(b) without looking at the description in context of all other information provided to consumers.  But this argument ignores the regulation's plain

-22-

language, which requires that "[c]harges *contained on telephone bills* must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered." 47 C.F.R. § 64.2401(b) (emphasis added). Even if oral notice or additional documentation was provided to consumers, the information contained on the billing document was not provided as required. A violation of section 201(b) occurred when the defendant billed a customer for WireWatch service under the heading "non-regulated service." The practice was "unlawful," in the words of the statute. If "any common carrier . . . permit[s] to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured." 47 U.S.C. § 206. The injured person may commence an action against the carrier "in any district court of the United States of competent jurisdiction." 47 U.S.C. § 206. Since the defendant concedes that it did send some bills to customers that contained this language, judgment under Rule 12(c) is appropriate because the practice is unlawful as a matter of law.

By the same reasoning, however, the Court has no trouble concluding that bills that charged for "Inside Wire Maint. Plan" were adequate to constitute a "plain language description of the service or services rendered." 47 C.F.R. § 64.2401(b). That description was clear and specific, and it stated precisely the basis for the charge. The Court finds that bills that contained that description complied with the statute and regulation as a matter of law. To the extent that the plaintiffs seek to define their class as including customers who received bills with that description, the class definition will be modified.

The defendant also contends that its liability cannot predate November 18, 1999 when the regulation took effect. Although agency rules typically will not be applied retroactively in the absence of express statutory authority, a rule clarifying an unsettled or confusing area of law "does

-23-

not change the law, but restates what the law according to the agency has always been. 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Orr v. Hawk*, 156 F.3d 651 (6th Cir. 1998). Here, the Regulation simply clarified an unsettled area of law.

The defendant also relies on the Telecommunication Act's two year statute of limitations codified at 47 U.S.C. § 415. However, fact issues preclude that application of that limitation at this time because a cause of action under the Act accrues on the date of the discovery of the injury; the discovery rule could extend the two-year period, which begins to run from the date when the plaintiff discovers or with reasonable diligence should have discovered the injury. *MCI Telecomm. Corp. v. FCC*, 59 F.3d 1407, 1416-17 (D.C. Cir. 1995). The plaintiffs assert that they did not discover nor could they have discovered the injury until January 2002, when the defendant changed its billing descriptions to reveal for the first time the basis of the charges. That determination requires factual development.

Based on the allegations and admissions in the pleadings, the Court concludes that the defendant's practice of billing for its WireWatch program using the description "Non-regulated Services" constitutes a violation of section 201(b) of the Telecommunications Act as a matter of law. The parties have not offered information as to the extent of the practice or the damages that might have been caused. Those determinations will require factual resolution through further motion practice or trial. However, the plaintiffs' motion for judgment on the pleadings will be granted as to the narrow issue discussed with respect to Count I of the complaint.

-24-

V.

The plaintiffs also have moved under Federal Rule of Civil Procedure 12(f) to strike paragraphs six and eight of the defendant's affirmative defenses on the grounds that they are insufficient and entirely inconsistent with the positions and admissions set forth in the defendant's answer.  The two affirmative defenses state:

> 6.  The relief requested in the Complaint is barred by applicable statutes of limitations in CenturyTel's respective state and federal tariffs.
>
> * * *
>
> 8.  This Court lacks jurisdiction over the subject matter of the Complaint for the reason that the Michigan Legislature has provided the Michigan Public Service Commission with jurisdiction and authority to adjudicate "slamming and cramming" disputes.

Def.'s Affirmative Defenses.  The plaintiffs argue that if inside wire maintenance services are non-regulated services, as the parties agree in their respective pleadings, then defenses which purport to treat the wire maintenance program as regulated services should be stricken as superfluous and inadequate as a matter of law because these purported defenses improperly assume that the issues in this case are somehow governed by, or related to, the defendant's tariffs for regulated transmission services.

The defendant responds that the Federal Rules of Civil Procedure reflect the policy that pleadings should be treated liberally, and that a party should have the opportunity to support its contentions at trial.  Since discovery has not been completed and the plaintiffs have not alleged prejudice, the motion should be denied because the defendant may be able to set forth a factual scenario in which the affirmative defenses are determinative.  The defendant does, however, agree

-25-

to abandon its eighth affirmative defense, which argues that the Michigan Public Service Commission has primary jurisdiction over the cramming and slamming disputes.

Courts disfavor motions to strike. *Ciminelli v. Cablevision*, 583 F. Supp. 144, 162 (E.D.N.Y. 1984). A motion to strike a defense will be denied unless the defense asserted is clearly insufficient as a matter of law. *Durham Indus., Inc. v. North River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979). If the sufficiency of the defense depends upon disputed questions of law or fact, then a motion to strike should be denied. *Linker v. Custom-Bilt Mach. Inc.*, 594 F. Supp. 894, 898 (E.D. Pa. 1984). Therefore, a motion to strike should only be granted if there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff. *FRA S v. Surg-O-Flex of Am., Inc.*, 415 F. Supp 421, 427 (S.D.N.Y. 1976).

The plaintiffs have not made such a showing here. Moreover, even if this case has nothing to do with the defendant's regulated rates or tariffs, any affirmative defenses related to such matters are superfluous and insufficient as a matter of law, the plaintiffs fail to show how they will be prejudiced by permitting the defense to stand. Therefore, the Court will deny the plaintiffs' motion to strike the defendant's sixth defense, but the eighth affirmative defense will be stricken by agreement.

VI.

The Court finds that this case or any aspect of it should not be referred to the Federal Communications Commission for resolution of any issue under the doctrine of primary jurisdiction. The Court will certify the action as a class action under Rule 23(b)(3). The Court also finds that the defendant's billing practice described above violates 47 U.S.C. § 201(b) and 27 C.F.R. § 64.2401(b)

-26-

as a matter of law.  The plaintiff has failed to establish gounds to strike the defendant's affirmative defense number six.

Accordingly, it is **ORDERED** that the plaintiffs' motion for class certification [dkt # 21] is **GRANTED**.  The determination of class certification is conditional and may be altered or amended prior to the decision on the merits in light of any changes in circumstances that make such action advisable.  *See* Fed. R. Civ. P. 23(c)(1).

It is further **ORDERED** that pursuant to Federal Rule of Civil Procedure 23(b)(3), the following class is certified in this cause:

> All persons who have paid CenturyTel, Inc. for charges for an inside wire maintenance insurance program described in CenturyTel's residential telephone bills as "Non-Regulated Services" during the period beginning October 29, 2000, or such earlier period if the charges were not know or reasonably could have been known by October 29, 2000; but excluding CenturyTel; its subsidiaries, affiliates, officers and directors; any entity in which CenturyTel has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded party.

It is further **ORDERED** that counsel of record for the named plaintiffs in this matter, namely Elwood S. Simon, Esquire and George G. Burke, III, Esquire, shall be appointed counsel for the designated class.

It is further **ORDERED** that the plaintiffs shall, at their expense, provide appropriate notice to all class members via first-class mail and in conformance with the requirements of Rule 23 of the Federal Rules of Civil Procedure.  The notice shall provide putative class members until **June 2, 2006** to notify the counsel for the parties and the Court of their intent to opt out of the proposed class.  The notice shall also provide that class members wishing to enter their own appearance in the matter through counsel shall do so by that same date.

-27-

It is further **ORDERED** that the parties shall confer and forward to the Court on or before **March 23, 2006** an agreed document that will be used to serve notice upon all members of the class. If the parties are unable to agree on the proper text for said notice, the parties shall forward the plaintiffs' proposed text along with a detailed list of objections from the defendant. The notice shall not be sent until Court approval is given. The notice shall be submitted for approval on or before **March 26, 2006**.

It is further **ORDERED** that the plaintiffs' motion for partial judgment on the pleadings [dkt # 18] is **GRANTED IN PART** with respect to Count I of the complaint. The Court determines that the defendant's billing practice during the relevant period describing charges for its WireWatch or other inside wire maintenance insurance program as "Non-Regulated Services" in unlawful within the meaning of 47 U.S.C. § 201(b) as a matter of law; and bills describing such charges as "Inside Wire Maint. Plan" were lawful within the meaning of 47 U.S.C. § 201(b) as a matter of law.

It is further **ORDERED** that the plaintiffs' motion to strike affirmative defenses [dkt # 18] is **DENIED**; however by agreement of the parties affirmative defense number 8 is **STRICKEN**.

It is further **ORDERED** that the parties appear for a Case Management and Scheduling Conference on **March 27, 2006 at 4:00 p.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 10, 2006

-28-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 10, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS