UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBRASUE BEATTIE and JAMES SOVIS,
on behalf of themselves and others
similarly situated,

               Case Number 02-10277
    Plaintiffs,        Honorable David M. Lawson

v.

CENTURYTEL, INCORPORATED,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

  Before the Court is a motion for partial summary judgment filed by the defendant, in which it alleges that it is entitled as a matter of law to limit damages to the time period that extends backward for two years from the commencement of this lawsuit on October 29, 2002. The Court previously certified a class consisting of individuals who paid for certain inadequately-described services "during the period beginning October 29, 2000, or such earlier period if the charges were not known or reasonably could not have been known by October 29, 2000." Opinion & Order Granting Pls.' Mot. for Class Certif., at 27. The defendant argues that the undisputed facts compel the conclusion that a reasonable person could have discovered the unauthorized charges each time he or she received an ambiguous bill, and therefore the discovery rule cannot toll the two-year statute of limitations as a matter of law. The Court heard oral argument on the motion on November 19, 2009 and now rejects the defendant's argument. The Court does not believe that receipt of a bill that contains a small charge for "Non-Regulated Services" would trigger the duty to investigate further as a matter of law. Certainly, in some cases an ambiguous billing description reasonably

would provoke an inquiry, but there are factual inferences that are required to reach that conclusion. At the summary judgment stage, the non-moving party – here, the plaintiffs – are entitled to have those inferences drawn in their favor. Because disputed questions of fact preclude summary judgment on the defendant's affirmative defense, the motion for partial summary judgment will be denied.

I.

The plaintiffs filed this class action alleging that the defendant violated the Federal Telecommunications Act, 47 U.S.C. 251 *et seq.*, and regulations enacted thereunder, by billing for inside wire maintenance insurance and for charging for such optional service when it was not ordered. The facts are well known to the parties and need only be summarized here for the purpose of this motion. The complaint alleges that beginning in at least 1994, and perhaps before that time, defendant CenturyTel had been billing customers for the maintenance of internal wiring at a monthly rate of $.50 to $.99. The rate increased to $3.95 about May 2001. The defendant identified this charge on its phone bills only as one for "Non-Regulated Services." However, in January 2002, CenturyTel reorganized its telephone bills and re-labeled the charge as "Inside Wire Maintenance Plan." The plaintiffs claim that they had no idea they were being charged for this optional service until it was identified properly on the phone bill.

The named plaintiffs in this case are Barbarasue Beattie and James Sovis. Ms. Beattie alleges that she was a residential telephone customer of defendant CenturyTel since November 1996. She subscribed to basic telephone service, and she received monthly bills through May 2001 that contained a charge ranging from $0.50 to $0.99 for an item described as "Non-Regulated Service." The charge increased in May 2001 to $3.95; but in January 2002 the defendant changed its billing

format, revealing for the first time that the "Non-Regulated Service" actually was for an inside wire maintenance protection plan, which Beattie claims she never ordered or authorized. Mr. Sovis tells a similar story, except that he had been purchasing basic phone service from CenturyTel since 1994. Both insist that they never ordered this service.

Over the course of their service relationship, Beattie received sixty-two phone bills with the ambiguous billing description and Sovis receive ninety-one such bills. Beattie testified that she first became aware of the unauthorized charge "[w]hen they changed the wording from nonregulated services to inside wire maintenance plan, and I knew I hadn't ordered that." Def.'s Mot. for Sum. J., Ex. 2, Beattie dep. at 11. She also testified that when she noticed the line item on her November 2000 phone bill, she did not know what the designation "non-regulated service" referred to, and she did not call CenturyTel to ask about the charge because "it's always appeared on my bill, nonregulated service; nonregulated services has always been on my CenturyTel bill." *Id.* at 39.

Similarly, James Sovis testified that he received phone bills with the "Non-Regulated Service" description and did not call to inquire what it meant. In addition, on three occasions Sovis received from CenturyTel a form entitled "Confirmation of Services Ordered," which included the legend "Maintenance Sngl Ln I/W." These forms were offered as exhibits at Mr. Sovis's deposition; only one bears a date, which is April 18, 2000. Def.'s Mot. for Sum. J., Ex. 4. Sovis acknowledged receiving these forms and stated that he did not call CenturyTel, although he did not understand what the legend meant. He said he did not pay much attention to the form because it began by declaring "THIS IS NOT A BILL. PLEASE DO NOT PAY." *Ibid.* Sovis testified that the "Non-Regulated Services" line item was among other monthly charges, leading him to believe that "it's part of basic service. It's the price of doing business. If I want a telephone, I pay the basic monthly service."

Def.'s Mot. for Sum. J., Ex. 5, Sovis dep. at 44. Both Sovis and Beattie testified that they were surprised when they learned the true nature of the charges. They spoke to friends and family members who bought telephone service from CenturyTel and learned that each one had been charged unknowingly for this optional service without having ordered it.

As part of its motion presentation, CenturyTel attached a record of a call from a customer sometime in May 2001 questioning the "Non-Regulated Service" charge, which in fact was for the inside wire maintenance program.

## II.

The defendant asks this Court to hold as a matter of law that the plaintiffs' cause of action accrued whenever the customer received a phone bill with an inadequate billing description and the customer paid the bill. CenturyTel insists that no tolling doctrine can apply in this case because the billing description was so ambiguous that a reasonable person would have been put on notice and was obliged to make inquiry. The defendant contrasts this case with the hypothetical circumstance where a line item on a bill was clearly stated but false. Such a customer's failure to inquire could be found reasonable, argues the defendant, because the biller's action would mislead the customer and prevent discovery. The defendant believes that a non-compliant but ambiguous billing description can never support a claim that the statute of limitations should be tolled by the discovery rule because the ambiguity should put putative plaintiffs on inquiry notice as a matter of law.

The standards for evaluating a motion for summary judgment are well known but bear repeating here. As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the

non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009). In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Refining, LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

The Court already has determined that the defendant's billing practice of charging for its Wire Watch program but describing it on the phone bill as "Non-Regulated Services" violated section 201 of the Federal Telecommunications Act (FTA), which states:

> All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful. . . . The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.

47 U.S.C. § 201(b). Under that statute, the Federal Communications Commission (FCC) promulgated a regulation declaring that an ambiguous bill is "unreasonable." *See* 47 C.F.R. § 64.2401(b) (requiring that "[c]harges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service [in language] . . . sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received . . ."). The Act authorizes suits against telephone service providers violating the Act "for the full amount of damages sustained in consequence of any such violation . . . together with a reasonable counsel or attorney's fee." 47 U.S.C. § 206.

The Act contains a two-year statute of limitations that applies to "[a]ll complaints against carriers for the recovery of damages not based on overcharges." 47 U.S.C. § 415(b). The two-year period begins to run "from the time the cause of action accrues." *Ibid*. The statute is phrased in terms of complaints filed with the FCC, but courts apply it to private civil suits. *See Ward v. N. Ohio Tel. Co.*, 381 F.2d 16, 16 (6th Cir. 1967).

As a general rule, a cause of action accrues when the plaintiff "'discovers that he has been injured, not when he determines that the injury was unlawful." *Amini v. Oberlin Coll.*, 259 F.3d 493, 499-500 (6th Cir. 2001) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)). This so-called "discovery rule" has been applied by other courts to claims under the FTA. *See Commc'ns Vending Corp. of Ariz. v. FCC*, 365 F.3d 1064, 1074 (D.C. Cir. 2004) (citing *MCI Telecomms. Corp. v. FCC*, 59 F.3d 1407, 1417 (D.C. Cir. 1995), *MCI Telecomms. Corp. v. Teleconcepts*, 71 F.3d 1086, 1100 (3d Cir. 1995), and *Pavlak v. Church*, 727 F.2d 1425, 1428 (9th Cir. 1984)); *see also Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 944 (8th

Cir. 2007) ("In federal question cases, the discovery rule applies in the absence of a contrary directive from Congress.") (internal quotation marks and citations omitted). "Under the general formulation of the discovery rule, a claim accrues (and the statute of limitations begins to run) when the plaintiff discovers, or in the exercise of due diligence should have discovered, the injury which forms the basis for his claim." *Med. Mut. of Ohio v. K. Amalia Enters. Inc*, 548 F.3d 383, 391 (6th Cir. 2008). "Once the prospective plaintiff is on notice that it might have a claim, it is required to make a diligent inquiry into the facts and circumstances that would support that claim." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996).

The discovery rule, therefore, calls for an assessment of two elements: first, whether the objective facts should have put the plaintiff on notice of a potential claim; and, second, whether the inquiry made by the plaintiff was reasonable. *See Wyser-Pratt Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 563 n.9 (6th Cir. 2005) (citing *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 500 (6th Cir. 2003)). There is no dispute that the plaintiffs did not make any inquiry about the ambiguous line item on their phone bill until after the defendant changed its billing description in January 2002. The focus of the present motion is on the first element of the affirmative defense, that is, whether the phone bills the plaintiffs received before that date put them on inquiry notice as a matter of law.

It has been observed that inquiry notice does not arise until the plaintiff possesses enough information that is "sufficiently probative" of wrongdoing, that is, when the facts are "advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated – not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit." *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir.

1997) (fraud action under Rule 10b-5). The Sixth Circuit has held that generally, that "is not a question the trial judge or this court can answer; it is a question for the jury." *Hill v. A.O. Smith Corp.*, 801 F.2d 217, 225 (6th Cir. 1986).

Other courts have found inquiry notice to exist for claims under the FTA when commercial customers had constructive notice of a violation. *See Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1091-92 (9th Cir. 2006) (pay phone service provider's claim for overcharges against phone company accrued when the plaintiff knew that the phone company had not filed its fraud protection service rates withe the FCC); *Sprint Communications Co.*, 76 F.3d at 1228 (long-distance telephone company's cause of action against another long-distance carrier for excessive charges on private line communications service accrued when plaintiff's customer complained of excessive charges, even though complaint was eventually dismissed as unsupported by facts). *But see MCI Telecommunications Corp.*, 59 F.3d at 1417 (FTA claim did not accrue when carrier filed preliminary earnings report containing evidence of overcharges; claim accrued when final report was filed). However, the question of inquiry notice must include consideration of all the relevant circumstances, including the fact that the plaintiffs are residential customers and the degree of their sophistication, the type of services ordered and the plaintiffs' reasonable expectations, and the presentation of the billing itself.

There is no question that the defendant's billing description was ambiguous. In fact, the FCC discussed an example in its rule making comments that is virtually identical to the facts of the present case, labeling a like billing description "inherently ambiguous":

> We contemplate that sufficient descriptions will convey enough information to enable a customer reasonably to identify and to understand the service for which the customer is being charged. Conversely, descriptions that convey ambiguous or vague information, such as, for example, charges identified as "miscellaneous,"

> would not conform to our guideline. *Similarly, in our view, a charge described by what it is not, such as, for example "service not regulated by the Public Service Commission" is inherently ambiguous and does not disclose sufficient information. There is no way for a consumer to discern from this description that the charge refers to, for example, inside wiring maintenance insurance.*

*First Report and Order and Further Notice of Proposed Rulemaking*, FCC 99-72 at 26 (Apr. 15, 1999) (emphasis added) (quoted in *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 166 (E.D. Mich. 2006)).

That inherent ambiguity, however, does not necessarily compel a finding that the plaintiffs should have known enough to ask questions. The named plaintiffs were residential customers. They ordered basic telephone service, and they testified that is what they expected to receive. The billing format itself itemized the monthly charges each month from 1994 (for Sovis) and 1996 (for Beattie) through January 2002 in five lines listed as "LOCAL SERVICE IN ADVANCE," "SUBSCRIBER LINE CHARGE – INTER," "SUBSCRIBER LINE CHARGE – INTRA," NON-REGULATED SERVICES," and "OTHER CHARGES." Def.'s Mot. for Sum. J., Exs. 3, 6. That description typically appeared on page three of the bill. Page one contained a recap listing "Non-Regulated" and "Regulated" charges. The Court cannot say that a residential telephone customer that had ordered basic service, when confronted with a phone bill in the format presented, should have been motivated to inquire. The plaintiffs acknowledged that they did not understand the charge on their bills, but that concession does not lead ineluctably to the conclusion that they should have known the billing "practice . . . [was] unjust or unreasonable" within the meaning of 47 U.S.C. § 201(b).

The confirmation-of-service notices do not change the analysis. The description "Maintenance Sngl Ln I/W" conveys little information, and there is nothing that ties the charge to

the "Non-Regulated Services" item on the actual bill. Of course, a fact finder may draw the inference that a person confronted with this documentation knew enough to become inquisitive. But the standard under the discovery rule requires only reasonableness, not paranoia. *See Heinrich v. Sweet*, 44 F. Supp. 2d 408, 417 (D. Mass. 1999) (stating that reasonable diligence does not require a plaintiff to "scour medical journals . . . after their loved ones die of terminal brain cancer" and explaining that discovery rule does not exist to "encourage or reward simple paranoia") (citation omitted).

It also is worth noting that from this entire period, the defendant was able to produce only one record of an inquiry about the billing description. This, of course, is not dispositive. However, if the defendant's premise is true – that the ambiguous billing description she received would have put a reasonable person on notice to inquire whether the billing practice was unreasonable – one would think that more reasonable people would have surfaced from among the defendant's residential customers. *Cf. Staton Holdings, Inc. v. MCI Worlddom Commc'ns, Inc.*, 19 F.C.C.R. 8699, 2004 WL 1066312 (FCC May 13, 2004) (holding where telephone servicer was billing business for servicing its toll-free numbers even though those numbers were no longer functional, business's failure to realize that all of the toll-free numbers were out of service was not unreasonable, in part, because the service was an inbound service and no customers complained about not being able to reach the retailer).

Based on the present record, the defendant has not established that the case is one that should fall outside the general rule that discovery of an injury for purposes of determining when a claim accrues "is a question for the jury." *Hill*, 801 F.2d at 225.

III.

The Court concludes that when the record is examined and all reasonable inferences are drawn in favor of the plaintiffs, the defendant has not established as a matter of law that its statute-of-limitations defense must succeed as a matter of law, which would limit damages to a two-year period preceding the commencement of this action.

Accordingly, it is **ORDERED** that the defendant's motion for partial summary judgment [dkt #217] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 7, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 7, 2009.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO